UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BOHDAN KLIMCHAK [sic] and
KONSTANTIN TRIBUSHNIY, individually
and on behalf of all other persons similarly
situated who were employed by Cardrona, Inc.,
Cardronas, II, Inc., Metal & Roof Supplies, Inc.,
Ultan Gauigan [sic], Michael Williams,
Dani [sic] Moore, and/or any other entities
affiliated with or controlled by Cardrona, Inc.,
Cardronas, II, Inc., Metal & Roof Supplies Inc.,
Ultan Gauigan [sic], Michael Williams and/or
Dani [sic] Moore,

                Plaintiffs,

                -against-

CARDRONA, INC., CARDRONAS, II, INC.,
METAL & ROOF SUPPLIES, INC., ULTAN
GAUIGAN [sic], MICHAEL WILLIAMS,
DANI [sic] MOORE, and/or any other entities
affiliated with or controlled by Cardrona, Inc.,
Cardronas, II, Inc., Metal & Roof Supplies Inc.,
Ultan Gauigan [sic], Michael Williams and/or
Dani [sic] Moore,

                Defendants.
----------------------------------------X

**OPINION & ORDER**
**CV-09-04311 (SJF)(ARL)**

FEUERSTEIN, J.

On October 7, 2009, plaintiffs Bohdan Klymchak ("Klymchak"), i/s/h as Bohdan Klimchak, and Konstantin Tribushniy ("Tribushniy") (collectively, "plaintiffs"), on behalf of themselves and all others similarly situated, commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b); New York Labor Law § 633; and 12 New York Codes, Rules and Regulations ("NYCRR") §§ 142-2.2 and 142-2.4, against their putative employers, defendants Cardrona, Inc. ("Cardrona"), Cardronas, II, Inc. ("Cardronas II") and Ultan

1

Galligan ("Galligan"), i/s/h as Ultan Gauigan, (collectively, "the Cardrona defendants"); defendants Metal & Roof Supplies, Inc. ("M&R") and Paul Moore ("Moore"), i/s/h as Dani Moore, (collectively, "the M&R defendants"); and defendant Michael Williams ("Williams"), to, *inter alia*, recover unpaid overtime and other wages, compensation and benefits. Four (4) additional individuals, Tomasz Helwing, Lukasz Jablonski, Artur Mazur ("Mazur") and Marek Tylutki ("Tylutki") (collectively, "the opt-in plaintiffs"), have consented to join in this action.[1] (Doc. No. 26). Pending before the Court is plaintiffs' motion, *inter alia*, for an order conditionally "certifying" this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), in order to facilitate the sending of notice to potential plaintiffs. For the reasons set forth herein, plaintiffs' motion is granted in part and denied in part.

I.  BACKGROUND

   A.  Factual Background[2]

Defendant Galligan is the sole shareholder, director and officer of Cardrona and Cardronas II. (Affidavit of Ultan Galligan [Galligan Aff.], ¶¶ 1, 5). Moore has never had any ownership interest in Cardrona or Cardronas II. (Affidavit in Opposition of Paul Moore [Moore Aff.], ¶ 3).

---

[1] Although the "Notice of Filing" filed by plaintiffs' counsel indicates that six (6) individuals consented to join the collective action, two (2) of the individuals identified, Bohdan Klymchak, incorrectly designated on the notice of filing as Klymchak Bohdan, (see Affidavit of Bohdan Klimchak [sic], p. 3), and Konstantin Tribushniy, incorrectly designated on the notice of filing as Konstantin Tribusnni, (see Consent to Joinder by Konstantin Tribushniy), are the representative plaintiffs.

[2] The following facts are discerned from the pleadings and affidavits submitted in support of, and in opposition to, plaintiff's motion and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

Cardrona is a New York corporation engaged in "general construction work such as masonry, roofing, waterproofing and general construction." (Galligan Aff., ¶ 6). According to Galligan, Cardrona "employs laborers such as roofers, water proofers, laborers, and metal workers, and also employs staff to work in its Maspeth, New York office location, and/or to work as drivers and delivery-persons." (Id. at ¶ 7).

Defendant Moore is the president of M&R. (Moore Aff., ¶ 1, Ex. 2). Galligan is not an officer, director, employee or shareholder of M&R. (Galligan Aff., ¶ 13; Moore Aff., ¶ 3, Ex. 2). Klymchak avers, however, *inter alia*: (a) that on two (2) occasions he attempted to cash paychecks issued by M&R, but was told that there was no money in M&R's account, following which his paychecks were re-issued by Cardrona; (b) that he was told by an unidentified individual(s) that Cardrona and M&R were "'partner' companies," and (c) that he saw Galligan "at some of the jobsites" and Moore at "the company's office." (Reply Affidavit of Bohdan Klimchak [sic] [Klymchak Reply], ¶¶ 6, 8, 9). Klymchak does not, however, submit copies of any paychecks, tax statements or other documentation to support his claim of employment with Cardrona. The only evidence plaintiffs offer to support any connection between the Cardrona defendants and M&R, other than Klymchak's conclusory averments, is information from the New York State Department of State, Division of Corporations ("NYSDOS") which indicates, *inter alia*, that the chairman or chief executive officer ("CEO") of Cardrona is defendant Williams, that the chairman or CEO of Cardronas II is Galligan (incorrectly identified as "Gauigan") and that the NYSDOS is authorized to accept process on behalf of both Cardrona and Cardronas II and forward it to Williams at an address in Manhattan. (Klymchak Reply, Ex. 2). The NYSDOS is also authorized to accept

3

process on behalf of M&R and forward it to Williams at the same Manhattan address. (Moore Aff., Ex. 2).

Plaintiffs allege that from approximately 2003 to present, they, and other members of the putative class, were employed by defendants to perform construction work. (Complaint [Compl.], ¶ 24). Specifically, Klymchak avers that he was employed by "the company" for approximately five (5) months, i.e., from approximately April 2008 until September 2008, (Affidavit of Bohdan Klymchak [Klymchak Aff.], ¶ 3; Klymchak Reply, ¶ 3); Tribushniy avers that he was employed by "the company" from approximately Spring 2008 until February 2009, (Affidavit of Konstantin Tribushniy [Tribushniy Aff.], ¶ 3); Mazur, an opt-in plaintiff, avers that he was employed "by the Defendants" for approximately two (2) years, i.e., from February 2007 until February 2009, (Affidavit of Artur Mazur [Mazur Aff.], ¶ 2); and Tylutki, another opt-in plaintiff, avers that he was employed "by the Defendants" from July 2008 until November 2009. (Affidavit of Marek Tylutki [Tylutki Aff.], ¶ 2). Plaintiffs, Mazur and Tylutki all aver that they performed general construction work, including, *inter alia*, waterproofing, roofing and sheet metal work, on behalf of defendants. (Klymchak Aff., ¶ 4; Tribushniy Aff., ¶ 4; Mazur Aff., ¶ 3; Tylutki Aff., ¶ 3). In addition, Tribushniy claims that he occasionally "drove the company van and delivered materials to work sites." (Tribushniy Aff., ¶ 4). Plaintiffs, Mazur and Tylutki aver that they received paychecks from both Cardrona and M&R. (Klymchak Aff., ¶ 7; Tribushniy Aff., ¶ 13; Mazur Aff., ¶ 6; Tylutki Aff., ¶ 6). However, no plaintiff or opt-in plaintiff has asserted that he was employed by Cardronas II. According to Galligan, Cardronas II has not performed any work, earned any revenue, employed any person or made any disbursements since the end of 2007, prior to plaintiffs' and Tylutki's terms of employment. (Galligan Aff., ¶ 4). In support of his contention, Galligan

4

submits Cardronas II's federal income tax return (Form 1120S) for the year 2008, which reflects no income or disbursements for that year. (Galligan Aff., Ex. 1).

Galligan denies that Klymchak was ever employed by Cardrona and avers that Tribushniy, Mazur and Tylutki were part-time employees employed by Cardrona "for only a brief period of time." (Galligan Aff., ¶¶ 8, 15-17). According to Galligan, Tribushniy was employed by Cardrona for approximately two (2) months in 2008 and for a total of sixty-nine (69) hours in 2009; Mazur was employed by Cardrona for approximately two (2) months in 2008 and for "a little more than a month" in 2009; and Tylutki's total wages from Cardrona for 2009 were sixteen thousand two hundred forty-four dollars ($16,244.00). (Id. at ¶¶ 18-24, Ex. 3). According to Moore, Klymchak only worked on a single job for M&R from mid-May 2008 until mid-September 2008 and Tribushniy only worked on a single job for M&R from August 2008 through September 2008. (Moore Aff., ¶ 5). In reply, Klymchak submits his 2008 W-2s showing that he earned twenty-one thousand four hundred fifty dollars ($21,450.00) in wages from M&R that year. (Klymchak Reply, Ex. 1).

Plaintiffs and Tylutki aver that they "recall working with no less than 50 [fifty] workers during [their] employment" and that their co-workers usually performed the same tasks or type of work that they performed. (Klymchak Aff., ¶ 4; Tribushniy Aff., ¶ 4; Tylutki Aff., ¶ 3). In his reply affidavit, Klymchak identifies four (4) of his co-workers, including Tribushniy, one of the opt-in plaintiffs and two (2) additional individuals. (Klymchak Reply, ¶ 4). Mazur avers that he "recall[s] working with no less than 30 [thirty] workers during [his] employment" and that his co-workers "performed the same type of work [he] performed." (Mazur Aff., ¶ 3).

Plaintiffs allege that defendants regularly required them, and other members of the putative class, to perform work in excess of forty (40) hours per week without paying them overtime compensation at the rate of one and a half (1.5) times their regular rate of pay. (Compl., ¶¶ 25-26). Specifically, plaintiffs and Tylutki aver that they "typically worked no less than 9 [nine] hours per day 5-6 [five to six] days a week," with only a thirty (30) minute lunch break. (Klymchak Aff., ¶ 5; Tribushniy Aff., ¶ 5; Tylutki Aff., ¶ 4). Similarly, Mazur avers that he "typically worked no less than 8-9 [eight to nine] hours per day 5-6 [five to six] days a week," with only a thirty (30) minute lunch break. (Mazur Aff., ¶ 4). Moore denies that M&R had a general policy or plan not to pay overtime wages and avers that M&R did pay overtime wages to its workers during the period in which plaintiffs were employed by it. (Moore Aff., ¶ 6).

Plaintiffs further allege: (a) that defendants typically required them, and other members of the putative class, to work ten (10) or more hours per day without paying them "spread of hours" compensation, (Compl., ¶¶ 27-28); and (b) that from approximately 2003 to present, defendants entered into contracts with governmental entities to perform construction-related work ("the public works contracts") but failed to pay their employees who performed work pursuant to the public works contracts the prevailing rate of wages and supplemental benefits, i.e., health, welfare and non-occupational disability insurance, retirement and vacation benefits, holiday pay and life insurance, (Compl., ¶¶ 39-42). Plaintiffs, Mazur and Tylutki aver that they were paid hourly rates between seventeen dollars ($17.00) to twenty-five dollars ($25.00) "for all of the hours that [they] worked each day and week." (Klymchak Aff., ¶ 6 ($20.00 to $25.00); Tribushniy Aff., ¶ 6 ($20.00); Mazur Aff., ¶ 5 ($17.00 to $20.00); Tylutki Aff., ¶ 5 ($22.00 to $25.00)). They all deny ever being paid overtime wages or prevailing wage rates when they worked on "government jobs,"

or receiving "spread of hours" compensation. (Klymchak Aff., ¶¶ 8, 9; Tribushniy Aff., ¶¶ 8, 9; Mazur Aff., ¶¶ 7, 8; Tylutki Aff., ¶¶ 7, 8). Moore avers that "[d]uring the few brief months that plaintiffs Klimchak [sic] and Tribushniy worked at [M&R], they did not work on any prevailing wage jobs." (Moore Aff., ¶ 4).

B. Procedural Background

On October 7, 2009, plaintiffs, on behalf of themselves and all others similarly situated, commenced this action pursuant to, *inter alia*, the FLSA against defendants seeking to recover unpaid overtime and other wages, compensation and benefits. Plaintiffs allege: (1) that defendants willfully failed to pay their employees overtime wages for work they performed in excess of forty (40) hours per week in violation of the FLSA (first cause of action) and state law (second and third causes of action), (Compl., ¶¶ 48-80); (2) that defendants willfully deprived their employees of "spread of hours" compensation, i.e., an additional hour's pay when they worked more than ten (10) hours a day, in violation of state law (fourth cause of action), (Compl., ¶¶ 81-87); and (3) that defendants breached the public works contracts by failing to pay their employees prevailing wages and other supplemental benefits to which they were contractually and statutorily entitled (fifth cause of action), (Compl., ¶¶ 88-92). Plaintiffs also assert causes of action, in the alternative, for quantum meruit and unjust enrichment (sixth and seventh causes of action, respectively). (Compl., ¶¶ 93-103). Four (4) additional plaintiffs have opted into this action pursuant to 29 U.S.C. § 216(b).

## II. DISCUSSION

### A. Certification

29 U.S.C. § 216(b) provides, in relevant part, that "[a]n action to recover the liability under [this section of the FLSA] may be maintained against any employer * * * in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[3] "[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)) (alterations in original). "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement." Guillen v. Marshalls of MA, Inc., ___ F.Supp.2d ___, 2010 WL 4627851, at * 4 (S.D.N.Y. Nov. 16, 2010). Rather, the "certification" at issue in a collective action under the FLSA involves only the court's exercise of its discretionary authority "to facilitate the sending of notice to potential class members." Myers, 624 F.3d at 555 n. 10.

In Myers, the Second Circuit approved a two (2) step method for courts to utilize in determining whether to exercise the discretion to "certify" a collective action pursuant to Section

---

[3] "[U]nlike class certification under Fed. R. Civ. P. 23, no showing of numerosity, typicality, commonality and representativeness need be made for certification of a representative action under the FLSA." Cunningham v. Electronic Data Systems Corp., ___ F.Supp.2d ___, 2010 WL 5076703, at * 4 (S.D.N.Y. Dec. 13, 2010) (internal quotations, alterations and citations omitted); see also Guillen v. Marshalls of MA, Inc., ___ F.Supp.2d ___, 2010 WL 4627851, at * 5 (S.D.N.Y. Nov. 16, 2010) (accord). "The 'similarly situated' standard is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23." Cunningham, ___ F.Supp.2d ___, 2010 WL 5076703, at * 4 (internal quotations and citation omitted).

216(b). Myers, 624 F.3d at 554-5. At the first step, which "occurs at the beginning of discovery," Gorey v. Manheim Services Corp., No. 7:10-CV-1132, 2010 WL 5866258, at * 3 (S.D.N.Y. Nov. 10, 2010), the court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 555. This step requires only that plaintiffs "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997)); see also Cunningham, ___ F.Supp.2d ___, 2010 WL 5076703, at * 4 ("At this first step, the court uses a relatively lenient evidentiary standard to determine whether a collective action is appropriate." (citation omitted)). "The modest factual showing cannot be satisfied simply by unsupported assertions, * * * but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist, * * *." Myers, 624 F.3d at 555 (internal quotations, emphasis and citations omitted); see also Guillen, ___ F.Supp.2d ___, 2010 WL 4627851, at * 9 (holding that although the plaintiff's burden at the first step may be "very limited," it "is not nonexistent and the factual showing, even if modest, must still be based on some substance.") At this first step, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Cunningham, ___ F.Supp.2d ___, 2010 WL 5076703, at * 4 (quoting Lynch v. United Services Auto. Ass'n, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007)); see also Guillen, ___ F.Supp.2d ___, 2010 WL 4627851, at * 5 (holding that at the first step, "the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."

9

(citation omitted)); Gorey, 2010 WL 5866258, at * 4 (holding that although the defendants "may ultimately be correct that no unlawful policy exists * * * that decision should wait.") If the plaintiffs satisfy their burden of showing that "similarly situated" employees exist, the court should conditionally certify the class and order that appropriate notice be given to putative class members to afford them the opportunity to opt into the action. Cunningham, ___ F.Supp.2d ___, 2010 WL 5076703, at * 5. "Once notice is accomplished, the action proceeds as a collective action throughout the discovery process." Id. (quoting Lynch, 491 F.Supp.2d at 368).

At the second step of the Myers inquiry, conducted on "a fuller record" after discovery has largely been completed, Myers, 624 F.3d at 555; see also Guillen, ___ F.Supp.2d ___, 2010 WL 4627851, at * 6, the court must "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. The second step of the inquiry "utilizes a more stringent factual determination * * * because the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." Cunningham, ___ F.Supp.2d ___, 2010 WL 5076703, at * 5 (emphasis in original, internal quotations and citations omitted). If the "fuller record" reveals that the plaintiffs who have opted in are not "similarly situated" to the named plaintiffs, the court may "de-certif[y]" the action and dismiss the opt-in plaintiffs' claims without prejudice. Myers, 624 F.3d at 555; see also Gorey, 2010 WL 5866258, at * 3.

Plaintiffs' motion implicates only the first step of the Myers inquiry. In their affidavits, plaintiffs, Mazur and Tylutki aver, in relevant part, that they personally witnessed their co-workers working over forty (40) hours each week and that they and their co-workers discussed amongst themselves defendants' failure to pay them overtime compensation, prevailing wages and "spread

10

of hours" compensation. (Klymchak Aff., ¶ 10; Tribushniy Aff., ¶ 10; Mazur Aff., ¶ 9; Tylutki Aff., ¶ 9). The Cardrona defendants[4] oppose plaintiffs' motion on the basis, *inter alia*, that neither plaintiff, and none of the opt-in plaintiffs, is representative of Cardrona employees because their employment with Cardrona was intermittent or, in the case of Klymchak, non-existent. According to Galligan, plaintiffs and the opt-in plaintiffs are not "similarly situated" to other Cardrona employees because they were not full-time employees, as are most of Cardrona's employees, (Galligan Aff., ¶ 7), and they were not members of a union, as are "the overwhelming majority of [Cardrona's] employees," (Id. at ¶ 9).

The Cardrona defendants' contentions are misplaced at this preliminary stage of the proceedings, since, *inter alia*, they require resolution of factual disputes and an assessment of plaintiffs' and the opt-in plaintiffs' credibility. Moreover, parties may be similarly situated for purposes of Section 216(b) despite not occupying the same employment positions provided that they are all subject to the same unlawful policy or practice. See, e.g. Rudd v. T.L. Cannon Corp., No. 3:10-CV-0591, 2011 WL 831446, at *5 (N.D.N.Y. Jan. 4, 2011), report and recommendation adopted by 2001 WL 830636 (N.D.N.Y. Mar. 3, 2011); Summa v. Hofstra University, 715 F.Supp.2d 378, 390-2 (E.D.N.Y. 2010). "The similarly situated analysis * * * turns upon the features that make the particular policy or practice unlawful." Rudd, 2011 WL 831446, at * 5. Thus, for example, if defendants had a policy or practice of not paying overtime compensation to any of its laborers, whether full-time or part-time, union member or non-union member, all of those employees would be similarly situated for purposes of this analysis.

---

[4] The M&R defendants adopt the Cardrona defendants' opposition.

11

Similarly, Moore's denial that M&R had a common policy or plan that violated the FLSA also raises a factual issue that is inappropriate to resolve at this state of the proceeding. Plaintiffs' allegations that they were subjected to the same FLSA violations as potentially fifty (50) of their co-workers while employed by either Cardrona, M&R or both[5], which are supported by affidavits of both plaintiffs and two (2) of the opt-in plaintiffs, are sufficient to satisfy their minimal burden at the first step of the Myers inquiry. See, e.g. Avila v. Northport Car Wash, Inc., ___ F.R.D. ___, 2011 WL 833642, at * 3 (E.D.N.Y. Mar. 10, 2011); Greene v. C.B. Holding Corp., No. 1-CV-1094, 2010 WL 3516566, at * 4 (E.D.N.Y. Aug. 12, 2010); Summa, 715 F.Supp.2d at 386-7. In addition, the averments of plaintiffs, Mazur and Tylutki that they know that their co-workers were subjected to the same FLSA violations based upon discussions between themselves and their co-workers are sufficient to satisfy the lenient evidentiary standard at this preliminary stage of the proceeding. See, e.g. Avila, ___ F.R.D.___, 2011 WL 833642, at * 3.

In addition to the two (2) plaintiffs and four (4) opt-in plaintiffs, Klymchak has identified two (2) other co-workers whom he alleges are similarly situated to plaintiffs and were subjected to the same FLSA violations alleged in the complaint. Furthermore, plaintiffs' FLSA claim does not involve a large and broadly defined group. At most, according to plaintiffs' affidavits, the class would be comprised of approximately fifty (50) individuals. Thus, the potential burden on defendants associated with defending against a collective action in this case would be minimal. Accordingly, plaintiffs' motion for conditional certification is granted with respect to their claims against Cardrona, M&R, Galligan, Moore and Williams.

---

[5] The issue of joint employment and Cardrona's relationship, if any, with M&R is also not properly resolved at this juncture.

Nonetheless, plaintiffs have not met their burden of making even "a modest factual showing" that they are similarly situated to any employee at Cardronas II, since, *inter alia*, they have proffered no evidence that they themselves were ever employed by that defendant or that Cardronas II had a common policy or plan that violated the FLSA. Accordingly, the branch of plaintiffs' motion seeking conditional certification of their claims against Cardronas II as a collective action is denied.

B.     Sufficiency of Proposed Notice

The proposed notice that plaintiffs seek to circulate to potential class members is addressed to "[a]ll individuals who furnished labor to [defendants] commencing on or after October 7, 2003," exclusive of salaried supervisors, officers, executive, managerial or administrative personnel, and provides that this action "seeks the payment of overtime wages and spread-of-hours compensation pursuant to the [FLSA] and New York State Labor Law allegedly owed to current and former employees of * * * defendants who worked as laborers, carpenters, mechanics, roofers, and in other trades * * * related to defendants' construction business." (Plaintiff's [sic] Motion for Conditional Certification and Notice to the Class [Plf. Mot.], Ex. 5).

The Cardrona defendants object to the proposed notice on the basis, *inter alia*: (a) that since the FLSA provides for a two (2) year statute of limitations for overtime and minimum wage violation, or a three (3) year statute of limitations if the violations at issue are proven to be willful, the notice should be limited to only those laborers employed by Cardrona from 2007 to 2009 absent any demonstration of willfulness; (b) that the notice period should be limited to sixty (60) days, not the ninety (90) days provided in the proposed notice; and (c) that the proposed notice

13

improperly directs putative plaintiffs to send consent forms to plaintiffs' attorney instead of filing the consent forms with the Court Clerk.

The Cardrona defendants' statute of limitations objection ignores plaintiffs' state law claims, which are governed by a six (6) year statute of limitations and over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Accordingly, and since the number of potential plaintiffs is not large, it is appropriate to permit plaintiffs to provide notice to potential opt-in plaintiffs who may have viable state law claims within the six (6) year statute of limitations period, even if those plaintiffs' FLSA claims might be time-barred. See, e.g. Avila, ___ F.R.D.___, 2011 WL 833642, at * 4-5 (citing cases applying a six-year period to determine who is eligible to receive the Notice of Pendency).

However, a sixty (60) day notice period within which any opt-in plaintiff must return his or her Consent to Joinder is more consistent with FLSA practice than the ninety (90) day period suggested by plaintiffs in their proposed Notice of Pendency, see, e.g. Avila, ___ F.R.D.___, 2011 WL 833642, at * 6; Whitehorn v. Wolfgang's Steakhouse, Inc., ___ F.Supp.2d___, 2011 WL 420528, at * 5 (S.D.N.Y. Feb. 8, 2011), particularly since the number of potential plaintiffs is relatively small. Plaintiffs have not demonstrated that a sixty (60) day period would be insufficient.

In addition, the Notice of Pendency and Consent to Joinder must advise potential plaintiffs that they may join in the action by filing consent forms with the Clerk of the Court, not plaintiffs' counsel. See, e.g. Lujan v. Cabana Management, Inc., No. 10-cv-755, 2011 WL 317984, at * 13 (E.D.N.Y. Feb. 1, 2011) ("Recent cases in this district have suggested that [directing potential

14

plaintiffs to send their Consent to Joinder forms to plaintiff's counsel] implicitly discourages opt-in plaintiffs from selecting other counsel.")

III. CONCLUSION

For the reasons set forth above, plaintiffs' motion is granted to the extent that plaintiffs' FLSA claims against Cardrona, M&R, Galligan, Williams and Moore are conditionally certified to proceed as a collective action through discovery and plaintiffs are authorized to circulate a proposed Notice of Pendency and Consent to Joinder in accordance with this order, and plaintiffs' motion is otherwise denied. Plaintiffs must serve a proposed amended Notice of Pendency and Consent to Joinder in accordance with this order within five (5) days from the date of entry of this order and defendants must serve any objection thereto within three (3) days from the date of service, or defendants will be deemed to have waived any objection thereto. Plaintiffs must file a mutually agreeable proposed amended Notice of Pendency and Consent to Joinder, or request a conference with the Court to resolve any outstanding issues with respect thereto, within ten (10) days from the date of entry of this order.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
UNITED STATES DISTRICT JUDGE

Dated: March 24, 2011
　　　　Central Islip, New York